CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 1 2010

JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARILYN MORGAN SESSION,<br>    Plaintiff, | Civil Action No. 7:09cv00138 |
| v. | **MEMORANDUM OPINION** |
| TIFFANY C. ANDERSON, et al.,<br>    Defendants. | By: Samuel G. Wilson<br>United States District Judge |

This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq* (2006) (Title VII), by plaintiff Marilyn Session against defendants, the Montgomery County School Board (Board) and Dr. Tiffany Anderson in her official capacity as the Superintendent of the Montgomery County Public Schools (MCPS).[1] Session, an instructor employed by MCPS, alleges that Anderson and the Board retaliated against her because she filed a complaint against Anderson for making racially derogatory remarks to her. The matter is before the court on Anderson's motion to dismiss because only employers are subject to liability

---

[1] The court notes that the complaint does not make clear whether Anderson is being sued in only her official capacity, or in her personal capacity as well. It is established, however, that in the context of § 1983 claim, if the plaintiff does not specifically allege individual or official capacity, the court must "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). This court has held that there is no reason not to apply the same rule in the context of a Title VII suit. See King v. McMillan, 2006 WL 2126279, *1 (W.D.Va. 2006). However, because only employers are liable under Title VII, there is no basis for holding a government employee personally liable under Title VII. A government official in his personal capacity employs no one. See Martin v. Richmond City Police Dept., 2009 WL 2232753 *11-12 (E.D. Va. 2009) (finding that the individual named defendants, including the former Mayor of Richmond and Assistant Chief of Police were all actually employees "of either the City, the RCPD, or the Richmond City Commonwealth's Attorney's Office . . ." for purposes of a Title VII suit). The court will presume, therefore, absent a clear indication to the contrary, that a claim under Title VII against a government employee is an official capacity claim only.

under Title VII and she is not Session's employer, and on the Board's motion to dismiss or, in the alternative, for summary judgment because the charge of discrimination Session filed with EEOC was untimely. Session claims that dismissal is not appropriate, and that the court should not grant the Board's motion for summary judgment without affording her the opportunity to engage in discovery. The court finds that Anderson is not Session's "employer" for purposes of Title VII, and accordingly dismisses Anderson from the suit. However, the court finds that, in the light most favorable to Session, at least one of the retaliatory acts Session alleges is not time-barred, that she has pled a plausible claim for relief against the Board as to that act, and that, under the circumstances, some discovery is appropriate before the court considers a summary judgment motion.

## I.

Session's complaint alleges the following facts. MCPS has employed Session since August of 1977, when she began as a Social Studies teacher. From 1977 through 2004, she was given only excellent evaluations. In September of 2004, Session was promoted to Supervisor of Social Studies and Library Media. In March of 2005, Anderson became the Superintendent of the MCPS and, in June of that year, "made racially derogatory comments to [Session]."[2] (Compl. 3.) Session objected to the comments, and "filed a Complaint of racial harassment pursuant to Montgomery County Public School's Personnel Policies." (Compl. 3.)

On November 15, 2005, the Board found Session's complaint to be unfounded, and, on that same day, Anderson asked the Board to eliminate Session's supervisor position and create in its place a new position of "Supervisor of Social Sciences/Character Education." (Compl. 4.)

---

[2] The court notes that both Session and Anderson are African-American.

Session applied for this new position but was not granted an interview. According to Session the Board ultimately hired "an applicant with less seniority, less experience and who possessed no greater credentials than Mrs. Session . . . ." (Compl. 4.)

In April of 2006, Anderson informed Session that she would be reassigned to a teaching position "at a significant reduction in salary." (Compl. 4.) In July of that year, Session received her first negative performance evaluation and, in August, the Board reassigned her to the Phoenix Center, "an alternative education program for out of school/suspended students that is comprised of students who have displayed an anti-social attitude and/or display violent tendencies and includes students who have been convicted of various crimes." (Compl. 4-5.) Session alleges that this reassignment, which has cost her over $100,000 in lost wages and benefits, was in retaliation for her earlier complaint against Anderson, that she filed a timely charge of discrimination with the EEOC alleging retaliation,[3] that the EEOC found reasonable cause to believe that the Board had retaliated against her, and that she filed this suit within 90 days of receipt of her "right to sue letter."

Without deciding the motions that are currently before the court, the court referred the case to mediation. The parties engaged in settlement discussions that reached "an impasse on

---

[3] The question of the timing of when Session's charge should be considered filed is a matter of significant dispute. The formal written charge of discrimination is dated February 22, 2007 (which according to documents filed by the Board is within 300 days of the date the Board notified her that it was assigning her to the Phoenix Center, although more than 300 days from the date Session was notified that she would be reassigned from a supervisory position to a teaching position). Session contends, however, that the actual date she lodged her complaint with EEOC was even earlier – December, 2006 – when she completed and signed a questionnaire essentially detailing her allegations of discrimination and retaliation. See Edelman v. Lynchburg College, 535 U.S. 106 (2002). But for the reasons stated below the court need not reach that issue at this time.

3

January 19, 2010," and on January 21, jointly filed a motion to continue the approaching March 2010 trial date. According to that motion, the parties had postponed discovery during the negotiations and wished to file additional pretrial motions "that could be dispositive of this case." The court consented and instructed the parties to confer and arrange new trial and motions dates. The court now decides the motions that were pending before the court referred the case to mediation.

## II.

Anderson has moved to dismiss on the ground that only employers are proper defendants under Title VII and that, as a superintendent, she is not Session's employer.[4] Session counters that Anderson is an employer because she has influence over hiring and firing decisions. The court finds that Anderson is not an employer subject to liability under Title VII.

In Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998), the Fourth Circuit joined with the majority of other Circuits in holding that only employers, not supervisors, are

---

[4] Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for relief if it fails to state a claim upon which relief can be granted. The Supreme Court recently clarified this standard in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 557, 570 (2007)). Although the court accepts all factual allegations as true when considering a motion to dismiss, Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009), this "tenet . . . is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949.

subject to liability under Title VII.[5] The court noted that the existence of an agency relationship between a supervisor and his or her employer imposes potential liability under Title VII only on the employer, not on the agent. Therefore, the question here, as far as Anderson is concerned, is whether Anderson, as superintendent of the MCPS, is best classified as an employer, or a supervisor. An examination of Virginia law, in light of what is required for employer liability under Title VII, makes the answer clear; a school superintendent is a supervisor, not an employer.

The Virginia Constitution, Art. VIII, § 7 invests each local school board with the authority to supervise its respective school division. Under Va. Code § 22.1-59, each board appoints a local superintendent, who, pursuant to Va. Code § 22.1-70, performs the duties assigned to him or her by the board. Teachers, in turn, are "*employed and placed in appropriate schools by the school board* upon recommendation of the division superintendent." Va. Code § 22.1-295 (emphasis added). The superintendent then assigns teachers "to their respective positions in the school *wherein they have been placed by the school board* . . . ." Va. Code § 22.1-297 (emphasis added). Thus, a superintendent serves at the pleasure of the school board, and is best characterized as a supervisor of teachers, who are hired by the board. Therefore, a superintendent is not an employer for purposes of Title VII. Accordingly, the Court grants Anderson's motion to dismiss.

---

[5] "Title VII . . . defines employer as 'a person engaged in an industry affecting commerce who has fifteen or more employees' and 'any agent of such a person.'" Lissau, 159 F.3d at 180. The Fourth Circuit held that the term "agent" in the statute did not create individual liability for those who worked for an employer, but rather "represented an unremarkable expression of respondeat superior - that discriminatory personnel actions taken by an employer's agent may create liability for the employer." Id. (citations omitted). That is to say, under appropriate circumstances under Title VII, employers may be liable for their own actions, as well as those of their agents, but their agents are not liable.

## III.

The Board has also moved to dismiss the suit or, in the alternative, for summary judgment. The Board claims that Session filed her complaint with the EEOC more than 300 days after many of the retaliatory events that are alleged in the complaint, and that therefore, her claim as to those events is time-barred. The Board further contends that the alleged retaliatory actions that occurred within the 300 day window were not materially adverse to Session, and therefore, do not trigger the protections of Title VII. Session counters that she was subjected to a continuing pattern of retaliation and that she filed her charge of discrimination within 300 days of the last act of retaliation, an assignment to an undesirable and difficult position with lesser pay and benefits. The parties have submitted various documents in support of their respective positions. Session has also requested additional time for discovery should the court treat the Board's motion as one for summary judgment. Because at least one of the disputed events arguably occurred within the 300 day charge filing time period (even as the Board views it), and because Session has at least a plausible claim for relief based on that event, the court denies the Board's motion to dismiss. The court also believes that some discovery is warranted before it decides a summary judgment motion on the timeliness issues the Board has raised

The Board claims that only two of the allegedly retaliatory incidents fall within the statutory 300 day time period[6] for the filing of a complaint with the EEOC: Session's negative

---

[6] "In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. This period is extended to 300 days in cases such as this, 'when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004) (citing Title VII 42 U.S.C. § 2000e-5(e)(1)). Virginia is a deferral state.

performance evaluation, and her assignment to the Phoenix Center. The Board contends that neither of these events, even if retaliatory, independently constitute an adverse employment action under Title VII. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required.") (citation omitted). Essentially, the Board contends that these later events are simply the consequences of the earlier time-barred decision to eliminate Session's position. At this juncture, in the light most favorable to Session, the correctness of the Board's contention is far from clear.

Session alleges that, after being employed for twenty years with the MCPS (having received only excellent reviews), and after being promoted to a supervisory role with an increased salary, she was reassigned in August of 2006 to the Phoenix Center to work with students "who have displayed an anti-social attitude . . . or display violent tendencies and includes students who have been convicted of various crimes." (Compl. 4-5.) Due to this assignment, Session alleges that she has lost over $100,000 in wages and benefits. In short, Session has alleged that the assignment "had some significant detrimental effect," as opposed to merely claiming "that [her] new job assignment [was] less appealing." Id. at 376 (citations omitted). The allegations go well beyond what the Board contends was the simple assignment of "a teacher to a vacant position in a particular school . . . without any resulting loss in pay or benefits . . . ." (Board Motion to Dismiss 9.) Thus, Session has explicitly asserted that she lost pay and benefits due to her placement at the Phoenix Center, and it is not clear from the record

that her assignment there was essentially the inevitable result of an earlier time-barred event.[7] Accordingly, she has stated a plausible claim for relief.

Because it is not sufficiently clear that Session's assignment to the Phoenix Center is time-barred, the court need not determine at this juncture if the other alleged retaliatory acts - which may, from a remedial or practical perspective, be subsumed by the assignment - are time-barred. Under the circumstances, the question as to whether these other acts are independently actionable is best left for summary judgment after both parties have had the opportunity to conduct discovery concerning the issue. It is sufficient at this stage to recognize that in considering the Board's motion to dismiss, in the light most favorable to Session, at least one of the alleged retaliatory acts appears to have occurred within 300 days of the EEOC filing (even using the EEOC filing date argued by the Board). Consequently, the court denies the Board's motion to dismiss and finds summary judgment without discovery to be unwarranted.

## IV.

For the reasons stated, the court grants Anderson's motion to dismiss, and denies the Board's motion to dismiss or in the alternative for summary judgment.

**ENTER:** This February 11, 2010.

_____
UNITED STATES DISTRICT JUDGE

---

[7] The court notes that, in deciding the question of timeliness, there is a distinction between an adverse employment action and the inevitable consequences of an adverse employment action. See Delaware State College v. Ricks, 449 U.S. 250, 257 (1980). It is simply unclear on the scant record before the court whether Session's reassignment to the Phoenix Center qualifies as the former or the latter.

8