CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUN 21 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARILYN MORGAN SESSION, ) | Civil Action No. 7:09cv00138 |
|     Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | |
| TIFFANY C. ANDERSON, et al., ) | By: Samuel G. Wilson |
|     Defendants. ) | United States District Judge |

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006) ("Title VII"), by plaintiff Marilyn Session ("Session") against her employer, the Montgomery County School Board ("the Board").[1] Session, an African-American female, alleges that the Board retaliated against her because she filed a grievance with the Board against the Superintendent, Dr. Tiffany Anderson ("Anderson"), who is also an African-American female, for making racially derogatory comments on two occasions. The Board has moved for summary judgment on the ground that Session cannot establish a prima facie case of retaliation in violation of Title VII because Session neither was opposing an actual unlawful employment practice, nor could Session have reasonably believed that she was. The court finds that Anderson's alleged, isolated comments were neither sufficient to create a racially hostile working environment, nor sufficient to give rise to an objectively reasonable belief that Anderson had violated Title VII. Accordingly, the court grants the Board's motion for summary judgment.

---

[1] Session originally also brought suit against Dr. Tiffany Anderson, the former Superintendent of the Montgomery County Public Schools. Anderson was dismissed from the case pursuant to her motion to dismiss on February 11, 2010.

# I.

In the light most favorable to Session, the facts are as follows. Session has been employed by the Montgomery County Public Schools ("MCPS") since 1977, when she began as a Social Studies teacher. From 1977 through 2004, she was given only excellent evaluations. In September of 2004, Session was promoted to Supervisor of Social Studies and Library Media. In March of 2005, Anderson became the Superintendent of the MCPS. Session alleges that in June and July of that year, Anderson made two racially derogatory comments and Session complained to the Board that Anderson's comments amounted to racial harassment.

As detailed in Session's complaint to the Board, the first of these incidents occurred in June 2005. According to that complaint, Session stated that she was seated at her desk in the school board office speaking with her friend Brenda Brand, when Anderson walked in. According to Session, Anderson, said that she stopped to speak to Session and Brand, who are both also African-American, because "she thought she saw another 'person of color' in the office." (Session Incident Report 1.) Anderson then asked Session and Brand about finding a local hairdresser. During the conversation, Anderson asked Session how she styled her hair, and Session replied that she only washed and dried it. Anderson then commented "oh, you have that good hair," to which Session angrily responded that Anderson should "watch it." (Session Incident Report 1-2.)

Session asserts that Anderson's comment about having "good hair" has long been understood in the African-American community to be a racially charged insult which intimates that an individual has light-skinned features, and hair that isn't "like other black people['s]." (Session Incident Report 2.) In essence, because, as Session states, Anderson "is dark skinned

2

with traditional African-American hair . . ." (Session Motion in Opposition 2), her comment of "good hair" in this context is condescending because it implies that Session is "not black enough."[2] (Session Appeal Letter 3.)

The second incident, according to Session's complaint to the Board, occurred the following month at a staff meeting. At the end of the meeting, Anderson asked the attendees, including Session, to bring a baby picture of themselves to the next meeting to play a guessing game in which staff members would guess whose baby picture was whose. Anderson then stated to the group that they would have to use "plant" pictures, or fake photos, because "some of us have more melanin in our skin than others." (Session Incident Report 2.) Session believed that, as a light-skinned African-American woman, this comment was directed at her. She also asserts that the comment created an uncomfortable environment, and believed that it created unwanted attention from other staff members.

On November 15, 2005, the Board held a hearing to consider Session's complaint and determined that it was "unfounded." That same day, Anderson asked the Board to eliminate Session's supervisor position and create a new position in its place. Session applied for this new position but was not granted an interview, and the Board ultimately hired someone else for the position.

In April of 2006, Anderson informed Session that she would be reassigned from her supervisory role to a teaching position and would take a pay cut. In July of that year, Session received her first negative performance evaluation, and in August, Session was assigned to the

---

[2] Though she disputes that the alleged comment ever occurred, Anderson did testify during the internal investigation that she "would never say the term 'good hair'" because she understood it to be derogatory and offensive. (Anderson Testimony 147.)

3

Phoenix Center, an alternative education program for troubled students who have anti-social attitudes, display violent tendencies, or have been convicted of crimes. Session alleges that this reassignment was in retaliation for her internal complaint against Anderson, and has or will cost her over $100,000 in wages and lost benefits.

Session filed a charge of discrimination with the EEOC alleging retaliation, the EEOC found reasonable cause to believe that the Board had retaliated against her, and Session filed this timely suit against Anderson and the Board. On February 11, 2010, the court granted Anderson's motion to dismiss on the ground that only employers (and not supervisors) can be liable under Title VII. The Board now moves for summary judgment.

## II.

The Board moves for summary judgment[3] on the ground that Anderson did not actually violate Title VII, and that Session could not have reasonably believed that she did, and that therefore, Session cannot establish a prima facie case of retaliation. Session maintains that, in this context, she did have an objectively reasonable belief that Anderson violated Title VII. Because Anderson's comments were isolated incidents that did not give rise to a racially charged hostile working environment, and because it is not objectively reasonable to believe that Anderson's isolated comments violated Title VII, the court grants the Board's motion for summary judgment.

---

[3] Summary judgment is proper "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party. Sempione v. Provident Bank of Md., 75 F.3d 951, 954 (4th Cir. 1996).

To establish a prima facie case of retaliation under Title VII, a plaintiff must establish "that [she] engaged in a protected activity, that the employer took an adverse action against [her], and that a causal relationship existed between [her] protected activity and the employer's adverse action."[4] Baqir v. Pricipi, 434 F.3d 733, 747 (4th Cir. 2006) (citing Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004)). An individual engages in a protected activity when they "oppose[] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The Fourth Circuit has held that this sort of "opposition activity" is protected not only when it opposes an actual violation of Title VII, but also "when it responds to an employment practice that the employee *reasonably believes* is unlawful." Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006) (emphasis in the original) (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406-07 (4th Cir. 2005)). "[T]he analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one . . . [and therefore] may be resolved as a matter of law." Id. at 339 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001)). As explained by the Fourth Circuit:

> The "unlawful employment practices" that an employee can oppose, and thereby be protected from retaliation, include practices that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Such discrimination includes maintaining a racially hostile work environment, i.e., a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 51 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).

---

[4] The Board only challenges the first of these elements in its motion, and the court assumes *arguendo* that the other two are met.

Id. This standard is designed to balance the competing interests of protecting employees from workplace discrimination, and ensuring that "Title VII . . . does not [create] 'a general civility code for the American workplace.'" Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). To that end, the courts have held that, generally, "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Jordan, 458 F.3d at 339 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). See also EEOC v. Fairbrook Med. Clinic, – F.3d –, 2010 WL 2432734, at *6 (4th Cir. June 18, 2010).

Here, it is clear that Session did not engage in a protected activity under Title VII when she filed her internal complaint because Anderson's comments did not violate Title VII, and it was not objectively reasonable to believe that they did.[5] Session alleges two isolated incidents to support her hostile work environment claim: (1) that Anderson said to Session that she had "that good hair," and (2) that Anderson, who has a darker complexion than Session, made a comment about needing to use extra "plant" photos in a baby picture guessing game because some people had "more melanin in their skin than others." Though perhaps inappropriate and offensive to Session, these two comments, without more, simply do not create a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [Session's] employment and create an abusive working environment."

---

[5] The court notes that Session's internal complaint is the basis of her retaliation claim, not her subsequent filing with the EEOC. EEOC filings constitute "participation activity" as opposed to "opposition activity," and are accorded a greater presumption when assessing the prima facie validity of a claim. In this case, however, the alleged retaliation occurred in response to the internal filing, so the court need not address Session's later-filed EEOC complaint.

Harris, 51 U.S. at 21. Nor could Session have reasonably believed that Anderson's isolated comments constituted a violation of Title VII. As the Fourth Circuit has held, "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." Jordan, 458 F.3d at 340-41. Though the comments were subjectively offensive to Session, it was not objectively reasonable to believe that those two comments, without more, created a working environment that "was, or was soon going to be, infected by severe or pervasive racist, threatening, or humiliating harassment."[6] Id. at 341. The Supreme Court has specifically noted that the "mere utterance of an . . . epithet which engenders offensive feelings in an employee[] does not sufficiently affect the conditions of employment to implicate Title VII. [Unless such] [c]onduct . . . is . . . severe or pervasive enough to create an objectively hostile or abusive work environment[,] . . . [it] is beyond Title VII's purview."[7] Harris, 51 U.S. at 21 (internal quotation omitted). Accordingly, because Anderson's alleged comments did not violate Title VII, and

---

[6] The court reaches this conclusion fully aware that actionable Title VII discrimination and harassment is not limited to conduct between individuals of different races. The Supreme Court has highlighted that, in the "context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of [her] own race. 'Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.'" Oncale, 523 U.S. at 78 (citing Castaneda v. Partida, 430 U.S. 482, 499 (1977)). Indeed, in this case, it is alleged that Anderson's comments were offensive specifically because Anderson and Session are both African-American. That they were perhaps uniquely derogatory and inappropriate, however, does not overcome the fact that they were isolated incidents that did not give rise to a hostile working environment, nor did they create a reasonable belief that Anderson violated Title VII.

[7] The court does not imply that an isolated comment or occurrence can never amount to an actionable Title VII violation, but only that in this particular case, the isolated comments here did not.

7

because Session could not have reasonably believed that they did, Session's internal complaint did not constitute protected activity, and she cannot establish a prima facie case of retaliation.

## III.

For the reasons stated, the Board's motion for summary judgment is granted.

**Enter**: This 21st day of June, 2010.

UNITED STATES DISTRICT JUDGE